United States District Court
District of Massachusetts

| | |
|---|---|
| Pamela Jane Drew, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 16-cv-12122-NMG |
| ) | |
| Carolyn W. Colvin, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Pamela Jane Drew ("Drew" or "petitioner") filed this action to appeal the denial of her application for disability benefits against Carolyn W. Colvin, Commissioner of the Social Security Administration ("the Commissioner" or "respondent"). Petitioner claims she was wrongfully denied disability insurance benefits because the Administrative Law Judge ("ALJ") improperly discounted the medical opinion of her attending physician and otherwise made findings not supported by substantial evidence. Pending before the Court are petitioner's motion for an order reversing the Commissioner's decision and respondent's motion for an order affirming the Commissioner's decision. For the reasons that follow, petitioner's motion to reverse will be

-1-

denied and the Commissioner's motion to affirm will be allowed.

I. **Background**

   A. **Employment History and Alleged Disability**

Drew was 50 years old on the alleged "onset date" of October 30, 2013. She was previously employed as a Certified Nursing Assistant, hospital coordinator and home health aide. The nature of the claimed disability arises from back pain, leg pain and associated weakness with significant pain in the tailbone area.

Beginning in May, 2013, petitioner began treatment with Dr. Ian Colon, M.D., who noted decreased lumbar motion and sacroiliac ("SI") joint tenderness. He prescribed the painkiller Percocet which had a seemingly positive effect. At subsequent examinations, petitioner's pain had worsened and Dr. Colon prescribed three different replacement painkillers: Celebrex, Gabapentin and MS Contin, a longer lasting opioid to help petitioner manage her pain levels.

In October, 2013, petitioner began seeing Dr. Allison Gorski, M.D., for her lumbar spine pain. Dr. Gorski placed petitioner on a mix of opioid and non-opioid painkillers including Oxycodone, OxyContin, Gabapentin, Celebrex, Methadone and Topamax. Dr. Gorski frequently questioned petitioner about her level of pain, noting that the answers were usually between a seven and ten on a pain scale. With respect to petitioner's

work capacity, Dr. Gorski opined that petitioner could only sit or stand for one hour at a time during a standard eight-hour work day.  She found that petitioner had to change positions every 15 minutes while sitting, be allowed to take 10-15 minute unscheduled breaks and constantly be allowed to change from sitting, standing or walking.  Dr. Gorski also added that petitioner could not lift more than ten pounds and would likely be absent from work four days per month.

Petitioner consulted with two other doctors during the period after the alleged "onset date".  In April, 2014, she was treated by James Rainville, M.D., specifically for the radiating pain in her back.  Dr. Rainville noted that petitioner was very pain-focused during most of the examination and opined that her pain could be originating from her central nervous system.  He suggested water therapy using petitioner's pool as a supplementary form of relief.  In June, 2014, petitioner underwent a psychological evaluation by Sol Pittenger, Psy.D. Dr. Pittenger found petitioner's mood to be irritable, low and sad and ultimately decided petitioner's psychological issues to be opioid related.  Her primary source of relief had come from painkiller prescriptions and she later discontinued the water therapy despite initial positive effects.

Drew asserts that, due to her health problems as of October 30, 2013, the "onset date", she was unable to be gainfully

employed for the following four years through October 30, 2017, the date last insured.

   B.   **Procedural Background**

On November 25, 2013, petitioner applied for Title II disability benefits under the Social Security Act ("the Act"). She states she has been disabled and unable to work since the "onset date", October 30, 2013. On March 5, 2014, her claim was denied and on June 26, 2014, her claim was denied after reconsideration.

Petitioner filed a timely request for a hearing and a hearing was held on August 18, 2015, before ALJ Paul S. Carter. Petitioner was represented by counsel. Evidence from petitioner was considered alongside the testimony of an impartial vocational expert ("the VE"). The ALJ found that Drew was not disabled under sections 216(i) & 223(d) of the Act. Petitioner filed a request for review in October, 2015, claiming she was still absolutely disabled. In August, 2016, petitioner's request for reconsideration was also denied.

   C.   **Legal Standard**

To obtain benefits under § 1602 of the Act, 42 U.S.C. § 1381a, an individual must demonstrate that he is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

The impairment must be of such severity that the claimant is not only unable to continue his previous work but also unable to engage in other kinds of substantial work that exist in the national economy fitting his age, education and work experience. 42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is disabled, the ALJ determines whether

> 1) the claimant is engaged in "substantial gainful activity", 2) the claimant has a severe physical or mental impairment, 3) that impairment is equivalent to an impairment enumerated in the regulations, 4) the claimant's RFC meets the requirements of his previous work and 5) there are jobs that would be appropriate for the claimant given her RFC, age, education and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Furthermore, the ALJ must determine whether claimant met the insured status requirements of 42 U.S.C. §§ 416(i) and 423. Drew's earning records showed that she acquired sufficient quarters of coverage to remain insured through December 31, 2017. Therefore, Drew is required to establish disability on or before the date last insured in order to be entitled to a period of disability and to disability insurance benefits. See 42 U.S.C. §§ 423(a)(A) & (c)(1).

**D. The ALJ's Decision**

The ALJ found that Drew was not disabled under the Act. He considered evidence submitted by petitioner, testimony at petitioner's hearing, testimony from medical experts and the opinions of the VE to make his decision.

At step one, the ALJ found that Drew had not engaged in substantial gainful activity since October 30, 2013. Despite the fact that petitioner worked for profit into early 2014, her hours worked and salary realized did not rise to the level of substantial gainful employment. At step two, the ALJ found that petitioner had the following severe impairments: (1) myofascial pain syndrome, (2) anxiety and (3) depression. At step three, the ALJ found that petitioner did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If petitioner's impairments had met or exceeded that standard, she would be considered disabled but because her impairments did not meet the severity needed to trigger that provision, the ALJ continued to step four.

In his analysis of the record, the ALJ found that petitioner had the Residual Functional Capacity ("RFC") after the onset of her impairment to undertake light work as defined by 20 C.F.R. § 404.1567(b) with the caveat that she must be allowed frequently to change posture. In making that finding,

-6-

considerable weight was given to the opinion of state agency examiners Dr. M. Gopal and Dr. William Goulding. When examining medical reports of the petitioner, Dr. Gopal found that she could perform light work for six hours of an eight-hour work day. Upon reconsideration Dr. Goulding further limited petitioner to light work for four hours in an eight-hour work day, with the need to change positions every hour. Those opinions were in conflict with the severe prognosis of the treating physician.

The ALJ gave more weight to the State medical examiners and noted inconsistencies between reported pain levels and the amount of activity undertaken by petitioner. A further inconsistency was observed between representations of severe pain and observations of acute focus and ability to work. Moreover, the ALJ noted instances where petitioner stopped water therapy despite its reported positive effects and demanded more opioid painkillers despite the advice of her doctors, going so far as to change doctors when one would not prescribe stronger opioids. The ALJ also discerned that many of Dr. Gorski's claims regarding petitioner's work ability were given without adequate explanation.

At step four, the ALJ found that petitioner's RFC would not allow her to perform any past relevant work. According to the testimony of the VE, all of petitioner's past relevant work

required a level of exertion or specialization beyond petitioner's stated RFC. At step five, however, based on testimony of the VE, the ALJ found that there are a significant number of jobs in the national economy that petitioner can perform. Due to that finding, the petitioner was classified by the ALJ as "not disabled".

Petitioner filed a complaint with this Court in October, 2016. Pending before the Court are petitioner's motion for an order reversing the decision of the Commissioner and defendant's motion for an order affirming the decision of the Commissioner.

## II. Social Security Disability Insurance Appeal

### A. Legal Standard

The Act gives United States District Courts ("District Courts") the power to affirm, modify or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). A District Court's review of an ALJ decision is not, however, de novo. See Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Act provides that the findings of the Commissioner are conclusive if 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. See 42 U.S.C. § 405(g); Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001). If those criteria are satisfied, the Court must uphold the Commissioner's decision even if the record could justify a different

conclusion. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. See Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

**B. Application**

Petitioner claims the ALJ erred in denying her claim because: 1) he improperly discounted the opinion of Dr. Gorski and 2) the resulting RFC is not supported by substantial evidence.

The Commissioner responds that the ALJ properly evaluated the opinion evidence when assessing petitioner's RFC and that the ALJ properly considered the effects of petitioner's pain on her ability to maintain attention and concentration.

**1. Weight of Professional Opinion Evidence**

Petitioner claims that the weight given to the state examiners' findings was inappropriate and that the assignment of lesser weight to Dr. Gorski's opinions resulted in an erroneous assignment of her RFC. Respondent claims the ALJ properly weighed the testimony of all medical examiners under the standard set forth by the regulations. Social Security Ruling 96-8p provides guidance on how to weigh various medical opinions

in an RFC finding, stating,

> If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

In weighing evidence to determine a RFC, an ALJ may discount the attending physician's testimony so long as an explanation is given within the decision. See Tetreault v. Astrue, 865 F.Supp.2d 116, 125 (D. Mass. 2012). In this case, the ALJ provided such an explanation, illustrating a pattern of inconsistency between Dr. Gorski's prognosis and actions taken by petitioner.

Drew stresses that the rejection of Dr. Gorski's opinion is improper, maintaining that because the doctor had seen petitioner most consistently and frequently, her opinion should be accorded more weight than second-hand analysis from agency consultants. The ALJ explained that Dr. Gorski's opinions, despite outlining severe physical impediments to work, offer no relevant explanation as to why petitioner's symptoms are so debilitating. Because the ALJ stated his reasons for according less weight to Dr. Gorski's opinion, the decision was not improper. See King v. Colvin, 128 F.Supp.3d 421, 436 (D. Mass. 2015).

In light of representations made by the petitioner with respect to her daily life, the ALJ found a palpable difference between Dr. Gorski's opinion of petitioner's ability to work and

-10-

what petitioner actually was doing at the time of the RFC report. Specifically, the ALJ pointed to petitioner performing a full range of daily activities such as brief working spells, playing computer games and watching television with no evidence of attention deficit or labor hardship. Those particularized examples show a direct contrast between reported levels of activity by the petitioner and Dr. Gorski's opinion. The ALJ properly explained why the opinion was inadequate. See Bourinot v. Colvin, 95 F.Supp.3d 161, 177 (D. Mass. 2015).

Reliance on the opinion of Dr. Gopal and, to a lesser extent, Dr. Goulding, was also appropriate. Dr. Gopal's opinion made use of legitimate evidence on record, such as medical records from the various doctors who attended to petitioner and MRI scans of the affected area. The analysis of Dr. Goulding's second opinion and the modification of it by the ALJ to include a provision allowing for position changes are evidence of specific analysis of the facts and particularized consideration of petitioner's RFC. Cf. 128 F.Supp.3d at 436 (in which a treating psychiatrist's opinion regarding claimant's PTSD was discounted due to evidentiary inconsistency).

Petitioner claims that due to inappropriate weighing of medical testimony, the RFC to do light work is erroneous and not supported by substantial evidence. The ALJ's explanation detailing inconsistencies in the evidentiary record and his

concern for the petitioner's unwillingness to commence recommended therapy, however, constitute substantial evidence to the contrary under 42 U.S.C. §405(g).

**2. Substantial Evidence Supporting the RFC**

Petitioner claims that an erroneous reliance on state medical examiners tainted the RFC and that therefore there is no substantial evidence supporting the ALJ's finding that petitioner can do light work as defined in 20 C.F.R. § 404.1567(b). Respondent rejoins that the ALJ properly and consistently analyzed the evidentiary record when handing down his decision.

On examination of the record, every decision of the ALJ in weighing the evidence was supported by an adequate explanation. When analyzing claimant's credibility, the ALJ outlined inconsistencies between pain reporting levels and activities petitioner undertook at work and at home.

For this Court to grant relief, petitioner must show that the Commissioner improperly ignored evidence, offered less than a satisfactory explanation for the use of evidence or applied an incorrect legal standard. Derbes v. Colvin, 270 F.Supp.3d 520, 523 (D. Mass 2017). Petitioner's motion for reconsideration, by contrast, simply restates facts probative of a finding in favor of the petitioner. The ALJ's decision properly complied with the provisions of 42 U.S.C. § 405(g). The District Court will

therefore uphold his ruling even if the facts on their own could lead to a different result. 826 F.2d at 144. The ALJ's decision was supported by substantial evidence and applied the proper legal standard. Accordingly, his decision will be upheld.

**ORDER**

In accordance with the foregoing,

1) Petitioner's Motion for Order Reversing the Decision of the Commissioner (Docket No. 17) is **DENIED.**

2) Respondent's Motion for Order Affirming the Decision of the Commissioner (Docket No. 22) is **AFFIRMED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 14, 2018